IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION
_____

**MAURICIO AGUILAR,**
**DAVE HUGHES,**
**DANIEL RADMER,**
**BYRON SLAGLE,**
**MICHAEL VINSANT,**
**DUAINE WAGNER,**

**On Behalf of Themselves and All Others Sharing**
**a Question of Common or General Interest,**

    **Plaintiffs,**                                        Case No. 2:08-cv-00154-LA

    vs.

**HUSCO INTERNATIONAL, INC.,**

    **Defendant and Third Party Plaintiff,**

    vs.

**INTERNATIONAL ASSOCIATION OF**
**MACHINISTS AND AEROSPACE WORKERS,**
**DISTRICT NO. 10,**

    **Third Party Defendant,**
_____

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
_____

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 23, the Plaintiffs move for certification as the class representatives of all production and maintenance employees at Husco International Inc.,, who had at least one unpaid break of shorter than 30 minutes in duration on or after January 28, 2006. The Plaintiffs have brought two classes of claims against

1

Husco International Inc. ("Husco"): Claims for unpaid breaks and weekly overtime which arise solely under Wisconsin law, and claims for unpaid daily overtime pay and weekend pay which the Court has held arises under 29 U.S.C. §185. Certification is appropriate because the Plaintiffs meet the criteria of Federal Rules of Civil Procedure 23(a) and 23(c).

The proposed class satisfies each of the four requirements of Rule 23(a): There are close to three hundred members in the class, thus easily satisfying the requirement of numerosity. The factor of commonality is satisfied since Husco has engaged in a standardized course of conduct towards all members of the potential class by applying uniform payroll practices to deny them the break pay, weekend pay, and overtime pay that they are entitled to under the law and the collective bargaining agreement. The element of typicality is satisfied since all of the potential class' claims are based on an identical legal theory, and the only difference between the claims of class members is the amount of damages. Finally, the named plaintiffs are adequate representatives of the class since they are sufficiently familiar with the litigation, have a sufficient interest in the outcome of the litigation, and prosecuting the case will not adversely affect the concrete interests of other potential class members.

The plaintiffs seek to certify the class under Rule 23(c)(3). Common questions of law and fact predominate the potential class' claims against Husco, since all of the class' claims are identical except for the amount of damages. Class action is the superior method of adjudication because the potential class' individual claims are too small to be prosecuted individually. The class is manageable since membership in the class can be identified from documents that Husco is required by law to maintain, and

the class action is based upon identical legal theories and damage calculation methods. Interests of judicial economy also favor certifying the class, to avoid having 300 separate cases and trials.

The Court should therefore certify the class.

## FACTS

At all times in 2006 and 2007, Husco employed more than 300 production and maintenance employees at its Waukesha, Wisconsin facility. (Vinsant Aff. Ex. 3-5) The employees are represented for collective bargaining purposes by Machinists District 10. Production and maintenance employees at Husco are members of Local Lodge 1377, which is one of the local unions affiliated with District 10.[1] (Vinsant Aff. ¶2-3) Husco and the Machinists are parties to collective bargaining agreements that covered the time period of February 6, 2003 until February 5, 2006, as well as the time period between February 6, 2006 and February 7, 2010. (Vinsant Aff. Ex. 1, 2) The agreements apply to both members of the Machinists' bargaining unit, and probationary employees who are not yet eligible to join the union. (Vinsant Aff. ¶12)

The collective bargaining agreements state that employees may work two types of schedules: A regular shift, and a continuous shift. Under a regular shift, first shift employees work between 7 a.m. and 3:20 p.m., second shift employees work between 3:20 p.m. and 11:40 p.m., while third shift employees work between 11:40 p.m. and 7 a.m. (Vinsant Aff. Ex. 1, pg. 8; Ex. 2, pg. 9) Under the collective bargaining agreement employees working on first and second shift receive one unpaid 20 minute break, unless they work voluntary overtime or under continuous operation (Vinsant Aff. Ex. 1,

---

[1] For the sake of simplicity, hereafter District 10 and Local Lodge 1377 are referred to collectively as the "Machinists".

pg. 11, 13; Ex. 2, pg. 13, 14) Aside from the 20 minute break, employees are paid for all other time that they spend at the Husco facility. (Vinsant Aff.¶8; All other Plaintiffs' Aff. ¶6) On the other hand, on a continuous shift employees work shifts of 12 hours in duration starting at 6 a.m. and 6 p.m. (Vinsant Aff. Ex. 1, pg. 12; Ex. 2, pg. 14)

In practice, Husco did not pay employees for at least the vast majority of their 20 minute breaks between January of 2006 and October of 2007. (Vinsant Aff. ¶8; All other Plaintiffs' Aff. ¶6) Husco also did not count the vast majority of the breaks as hours worked, for the purpose of calculating the employees' entitlement to other pay, such as daily and weekly overtime pay. (Id.) Husco continued its refusal to pay employees for their 20 minute working breaks, until sometime in October of 2007 when it switched from the 20 minute break to a lawful 30 minute unpaid break. (Id.)

In addition to overtime pay required by law, the collective bargaining agreement also required Husco to pay employees for time and a half their regular rate for all hours worked in excess of 8 hours in one day, even if the employee did not work 40 or more hours during a week. (Vinsant Aff, Ex. 1, pg. 8; Ex. 2, pg. 9) The agreement also required time and half pay for all hours worked on Saturdays, and two times pay for all hours worked on Sundays. (Id.) Husco did not treat at least the vast majority of the employees' 20 minute breaks as hours worked, for the purpose of calculating their entitlement to daily and weekly overtime pay, or weekend pay. (Vinsant Aff, ¶8; All other Plaintiffs' Aff, ¶6)

The paychecks that Husco issues to its employees show the total number of hours they worked during the week, the hourly rate applicable to the work, as well as the total amount of pay that each employee received during the week. (Aguilar Aff. Ex.

4

1) Husco is also required by Wisconsin law to keep records for three years of the times when each employee started and ended work each day.  DWD §272.11(1)(d).

## ARGUMENT

I. **RULE 23 APPLIES TO EACH OF THE PLAINTIFFS' CLAIMS.**

In its ruling denying the plaintiffs' motion to remand, the Court found that the plaintiffs' claims for the unpaid 20 minute breaks and weekly overtime pay arise solely under Wisconsin law.  Rule 23 of the Federal Rules of Civil Procedure is applicable to the certification of a class in federal court to prosecute a state law claim. *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 346 (7th Cir. 1997) (Rule 23 applicable to the plaintiffs' Wisconsin Consumer Act claim brought in federal court).

In its decision on the plaintiffs' motion to remand, the Court also found that the plaintiffs' claim for daily overtime pay is preempted by 29 U.S.C. §185.  Rule 23 applies to class actions brought under 29 U.S.C. §185. *Schneider v. Electric Auto-Life Co.*, 456 F. 2d 366, 369 (6th Cir. 1972) (Class action proper since the plaintiff class includes 300 members, all class members are covered by contracts that are substantially the same, and the termination of each of the class members' rights were triggered by the same events and actions).

Rule 23 therefore applies to the plaintiffs' motion to certify the class on each of their claims against Husco.

II. **THE PROPOSED CLASS MEETS EACH OF THE REQUIREMENTS OF RULE 23(A).**

A proposed class satisfies all of the requirements of Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

5

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In the case at bar the proposed class satisfies each of the four requirements.

### A. The Proposed Class is Sufficiently Numerous.

As a general rule, courts in the Seventh Circuit have held that a class of 40 members is sufficiently numerous to meet the requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries*, 415 F. 2d 1326, 1333 n. 9 (7th Cir. 1968); Hyder *v. Washington Mutual Bank N.A.*, 235 F.R.D. 390, 396 (N.D. IL. 2006). *See also Urban v. Brier*, 401 F. Supp. 706, 709 (E.D. WI. 1975) (Joinder of a class of 54 would be impractical). A class of 150 or 300 members therefore is clearly large enough to meet the numerosity requirement. *Alvarez v. Joan of Arc Inc.*, 658 F. 2d 1217 n. 1 (7th Cir. 1981); *Swanson*, 415 F. 2d at 1333.

The plaintiffs' claims against Husco seek to recover damages for the time period between January 28, 2006 and October of 2007, when Husco switched from a unlawful 20 minute unpaid break to a lawful 30 minute unpaid break. As the seniority lists produced by the plaintiffs show, Husco employed between 300 and 350 members of the Machinists bargaining unit during the damages period. (Vinsant Aff. Ex. 3-5) The potential class may be even larger, since Husco applied the same unlawful payroll practices towards probationary employees, who may never have passed probation to join the bargaining unit. (Vinsant Aff. ¶4, 11) The proposed class therefore includes at least 300 members, which is more than sufficient to meet the numerosity requirement.

### B. There Are Questions of Facts and Law Common to the Class.

A putative class' claims meet the requirements of Rule 23(a)(2) when the claims

6

of each class member is based on a common nucleus of operative facts, even when there is some factual variation between the claims. *Rosario v. Livaditis*, 963 F. 2d 1013, 1017 (7th Cir. 1992). The putative class' claims share a common nucleus of operative facts when the defendants are alleged to have engaged in standardized conduct towards each plaintiff. *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998); *See also Kartman v. State Farm*, 2009 U.S. Dist. Lexis 9033 *17 (N.D. IN. 2009) (Commonality element satisfied because the plaintiffs allege State Farm engaged in standardized conduct by failing to adopt objective standards for evaluating claims); *Connel v. City of Chicago*, 254 F.R.D. 501, *21 (N.D. IL. 2008) (Commonality satisfied when all plaintiffs had their vehicles seized, and had storage and towing fees assessed against them).

Similarly, Husco engaged in a standardized course of conduct towards each member of the proposed class by applying the same definition of hours worked to all of its production and maintenance employees. The CBA required the uniform treatment of all bargaining unit employees, when they worked on first or second shift. (Vinsant Aff. Ex. 1, pg. 11; Ex. 2, pg. 13) In practice, all of the members of the proposed class were in the same boat in that the vast majority of their breaks were neither paid, nor counted as hours worked for the purpose of calculating overtime and weekend pay. (Vinsant Aff. ¶11; All Other Plaintiffs' Aff. ¶8) The main questions of law before the Court with respect to each putative class member is therefore also identical: Whether the class member is entitled to pay for the 20 minute breaks; and whether the 20 minute breaks should count as hours worked for the purpose of calculating his entitlement to overtime and weekend pay. The element of commonality is therefore clearly satisfied.

7

### C. The Claims of the Class Representatives are Typical of the Claims of the Class.

The claims of the class representative are considered typical if all members of the class were subject to the same allegedly illegal practices, and their claims are based on similar legal theories. *Keele*, 149 F. 3d at 595; *De La Fuente v. Stokely-Van Camp Inc.*, 713 F. 2nd 225, 232 (7th Cir. 1983). Similarity of legal theory outweighs factual differences between the claims of putative class members. *De La Fuente, supra; Rosario*, 963 F. 2d at 1018. The claims of class representatives are typical of the class, even though they have suffered different amounts of damages. *Rosario, supra; De La Fuente*, 713 F. 2d at 232-233. (Class representatives' claims are typical even though they had much shorter tenures with the defendant when compared to other members of the putative class).

Each member of the proposed class was subject to the same illegal practices by Husco at all times between January 28, 2006, and when the illegal 20 minute break was changed to a lawful 30 minute unpaid break in October of 2007. Specifically, Husco failed to compensate its employees for the vast majority of breaks shorter than 30 minute that they took. It also failed to count the vast majority of breaks as hours worked for the purpose of calculating the employees' entitlement to overtime and weekend pay. (Vinsant Aff. ¶8; All Other Plaintiffs' Aff. ¶6)

Each member of the putative class is also seeking to recover from Husco under the identical legal theory. The Wisconsin Administrative Code makes clear that breaks of less than 30 minutes in duration are hours worked, and therefore must be compensable. DWD §272.12(1)(c). The Administrative Code also makes clear that employees must be paid weekly overtime for all hours worked over 40 during the week.

8

DWD §274.03. Therefore, since the Husco production and maintenance employees' 20 minute breaks are hours worked, they must be counted as hours worked for the purpose of calculating the employees' entitlement to weekly overtime pay. The putative class' claims for daily overtime and weekend premium pay is similarly based on the identical legal theory that the term "hours worked" as used in Article 6.2 of the CBA has the same meaning as Wisconsin law; so that the 20 minute breaks must be counted as hours worked for the purpose of calculating daily overtime and weekend pay. (Vinsant Aff. Ex. 1, pg. 8; Ex. 2, pg. 9)

In Wisconsin, an employee's right to unpaid wages created by DWD §272.12 of the Administrative Code can be enforced through the mechanism of Wis. Stat. §109.03(5). *German v. Wisconsin DOT*, 2000 WI 62 ¶16 (WI. 2000). §109.03(5) also makes clear that:

> No employer may by special contract with employees or by any other means secure exemption from this section.

In other words, even if individual Husco employees did agree to waive their right to pay for the 20 minute breaks, or for overtime or weekend pay, the agreement is null and void under Wisconsin law. Under federal law, it is equally clear that an employee may not, through an individual agreement, waive benefits that he would be entitled to under the collective bargaining agreement, such as his right to daily overtime and weekend pay. *J.I. Chase Co. v. NLRB*, 321 U.S. 322, 328 (1944). The claims of the class present uniform claims of law, since dealings between Husco and individual members of the putative class cannot waive the members' right to unpaid wages.

Moreover, all of Husco's affirmative defenses, with the exception of defenses that relate solely to individual damages that are not relevant to the typicality analysis

9

(such as the alleged failure to mitigate damages), arise from dealings between Husco and the Machinists. The Machinists equally represented the probationary and other bargaining unit employees in their dealings with Husco. *Pease v. Production Workers Local 707*, 171 LRRM 3204 *11-12 (N.D. IL. 2003) (Union owes duty of fair representation to probationary employees). See also Vinsant Aff. ¶12. Since the Machinists equally represented all of the members of the putative class in their dealings with Husco, Husco's affirmative defenses as applied to each member of the putative class involve identical relevant facts.

Since resolving the claims for liability of each member of the putative class require the Court to consider identical facts and law, the element of typicality is clearly satisfied.

### D. The Named Representatives Will Adequately Represent the Class.

Named representatives are considered adequate to represent the class if (1) the named representative adequately understands the nature of the claim; (2) the representative have sufficient interest in the outcome of the litigation; (3) the litigation would not objectively harm the interests of putative class members; and (4) counsel for the class is qualified. *Robeldo v. City of Chicago*, 444 F. Supp. 2d 895, 907 (N.D. IL. 2006); *Schwartz v. System Software*, 138 F.R.D. 105, 107 (N.D. IL. 1991). All four elements are satisfied in the case at bar.

The requirement that named representatives have sufficient understanding of their claims is a low one. *Surowitz v. Hilton Hotel Corp.*, 383 U.S. 363, 371 (1966) (Named representative adequate despite her positive disavowal of knowledge of the lawsuit and lack of education, because of the diligence of class counsel in investigating

10

and prosecuting the claim); *Schwartz*, 138 F.R.D. at 107 (Class representative adequate when she understands the nature of her claim, but struggles to recite the gist of her claim and cannot name all of the defendants). Similarly, each of the named representatives in the case at bar understands what the lawsuit is seeking to recover from Husco, and therefore had adequate knowledge of the claims of the proposed class. (Vinsant Aff. ¶7; All Other Plaintiffs' Aff. ¶4)

When the named plaintiff's claims are typical of the claims of the class, the named plaintiffs would likely have a sufficient interest in the outcome of the litigation to ensure vigorous advocacy. *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 429 (N.D. IL. 2007). The named plaintiff would have a sufficient interest in the outcome of litigation even if the amount of damages he has suffered is low when compared to other members of the putative class. *In re Boromine Antitrust Litigation*, 203 F.R.D. 403, 411-412 (S.D. IN. 2001). Similarly, since each of the named plaintiffs advance claims that are identical to the claims of the remaining members of the putative class, they each have a sufficient interest in the litigation's outcome to ensure vigorous advocacy.

Potential class members are not antagonistic, when members of the potential class who are opposed to the lawsuit will not be adversely affected by the lawsuit's successful prosecution. *Colbert v. Blagojevich*, 2008 U.S. Dist. Lexis 75102 *25-26 (N.D. IL. 2008). In other words, courts understand that members of the potential class may oppose the lawsuit, so that Rule 23 will become a nullity if unanimous agreement among potential class members is required. *See also Christman v. Brawin Realty Advisors*, 191 F.R.D. 142, 153 (N.D. IL. 1999) (Class action should be certified even though some potential class members believe that the lawsuit should not be filed or

11

maintained). There is no antagonism between class members, unless some class members would suffer concrete harm from the claim's prosecution. *Flanagan*, 242 F.R.D. at 428-429 (No antagonism even though some members of the class may oppose the lawsuit because they have a continuing financial interest in the well-being of the defendant company). Similarly, the case at bar seeks to recover unpaid wages from Husco only, for an illegal payment practice that Husco corrected in October of 2007. The successful prosecution of the lawsuit therefore will not concretely and adversely affect any members of the putative class.

Finally, plaintiffs' counsel is competent, has significant practice in labor issues, with a wide breadth of litigation experience. Plaintiffs have made the necessary showing to demonstrate that they can adequately represent the class.

### III. THE PROPOSED CLASS ACTION MEETS THE REQUIREMENTS OF RULE 23(B)(3).

A claim that meets all of the requirements of Rule 23(a) may be maintained as a class action, if it satisfies the requirements of Rule 23(b)(3). Specifically, the proposed class action must be one where questions of law and fact common to class members predominate over questions that only affect individual members, and where the class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Both requirements are met in the case at bar.

#### A. Common Questions of Law and Fact Predominate.

The predominance criteria is satisfied when the potential class is seeking a remedy for a common grievance and the alleged grievance centers around the same occurrence of events. *Williams v. Brown*, 214 F.R.D. 484, 486 (N.D. IL. 2003). Possible variations in the damages suffered by individual class members does not

defeat the predominance of common questions of law and fact. *Hazelwood v. Bruck Law Offices*, 244 F.R.D. 523 * 6 (E.D. WI. 2007); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 679 (N.D. IL. 1989).

Similarly, in the present case all of the members of the putative class are seeking relief for two common grievances: First, Husco's failure to count their twenty minute breaks as compensable hours worked, unless they worked voluntary overtime or in a continuous operation. Second, Husco's failure to treat the twenty minute breaks as hours worked, for the purpose of calculating their entitlement to overtime and weekend pay. All of the putative class' claims also revolve around the same events: The negotiation of collective bargaining agreements between Husco and the Machinists, and Husco's subsequent and uniform administration of its policies concerning what hours are compensable, as well as how overtime and weekend pay are calculated. Common questions of law and fact therefore clearly predominate.

> **B. The Small Size of the Plaintiffs' Individual Claims Make a Class Action the Superior Method of Adjudication.**

The Seventh Circuit has long recognized that when the claims of individual plaintiffs are sufficiently small, litigation of the claims is only possible through a class action. *Weeks v. Bareco Oil Co.*, 123 F. 3d 84, 90 (7th Cir. 1941) (Requiring each individual claimant to file a separate suit following the denial of class certification would be almost equivalent to closing the door of justice on all small claimants). The class action device is therefore the superior method of adjudication, when individual claims are too small to justify litigating on their own. *Randolph v. Crown Asset Mfg.*, 254 F.R.D. 513, 520 (N.D. IL. 2008). The same rule equally applies, when the individual claimant's small claims are based on a statute that makes statutory damages and

13

attorneys' fees potentially available. *Herbert v. MRC Renewable Corp.*, 254 F.R.D. 344, 353 (N.D. IL. 2008). Potential damages in the $4,300 to $6,500 range are sufficiently small to render the bringing of individual claims impractical. *Moreno v. DFG Foods*, 2003 U.S. Dist. Lexis 8700 * 32 (N.D. IL. 2003) Individual damages as high as $22,000 have been held to be sufficiently small to make impractical the bringing of individual claims. *Paper Sys. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. WI. 2000).

In the case at bar, assuming an employee worked every day during a year with the exception of twelve holidays and two weeks of vacation (and all employees with more than three years seniority would receive more than two weeks of vacation per year), the employee would work approximately 238 days per year. (Vinsant Aff. Ex. 1, pg. 18, 20; Ex. 2, pg. 21, 23) Assuming the employee worked a 20 minute unpaid break during each of the 238 days, over the entire 20 months damages period the employee would have taken approximately 397 unpaid 20 minute breaks. For the purpose of this calculation, the plaintiffs will also assume that counting each 20 minute break as hours worked would result in 20 minutes of additional overtime pay, meaning the employee would receive 30 minutes pay per each 20 minute break that Husco has refused to pay. During the entire damages period the employee therefore would be entitled to an additional 205 hours of pay. Finally, plaintiffs will assume that $1/7^{th}$ of the 205 hours (i.e. 29 hours) fall on Saturdays, and $1/7^{th}$ of the 205 hours fall on Sundays. Since Saturdays are paid at time and a half, and Sundays are paid at two times regular pay, the employee in the sample scenario would be entitled to the equivalent of 248.5 hours of pay.

During the relevant time period production and maintenance employees were

14

paid using wage scales ranging from $13 to $28 per hour, depending on the employees' seniority and job classification. The vast majority of employees, including all six named plaintiffs, earned between $18 and $24 per hour during the time period after February 5, 2006. Assuming the $24 hourly rate is applicable, the employee would receive total damages of $5,964. Therefore, even under the most conservative estimate, the claims of each individual plaintiff is too small to bring as an individual action. *Paper Sys*, 193 FRD 605; *Moreno*, 2003 U.S. Dist. Lexis 8700 *32.

Indeed, in the typical 1/3 contingency fee arrangement, the attorney would be paid less than $2,000 for prosecuting the claims of an individual plaintiff class member, i.e. the price of less than ten hours of the attorney's time. Given the number of affirmative defenses that Husco has raised, along with the time and expense needed to calculate the exact amount of damages, the claim of the individual class member clearly cannot be litigated in less than 20, let alone 10 hours of attorney time. Practically, the claims of the individual class plaintiffs are too small to be brought as individual claims, thus rendering the class action procedure the superior method of adjudication.

### C. The Considerations Outlined by Rule 23(b)(3) Favor Using the Class Action Device.

In evaluating whether the class action is the superior method of adjudication, courts may consider (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Factor B clearly favors certifying the class, since no other litigation has been commenced by putative members

15

of the class against Husco for unpaid break and overtime wages. The other three factors similarly favor certifying the class.

Recognizing that individuals with a strong interest in controlling their own litigation can always opt out of a Rule 23(b)(3) class, courts have held that the advantages of a class action outweigh individual interest in controlling the litigation, when the claims of individual class members are too small to be brought as individual actions. *Nelson v. IPACCO Enterprises*, 2003 U.S. Dist. Lexis 26392 * 42-43 (S.D. IN. 2005) (Certifying class even though the claims of some members are as high as $80,000 to $90,000, because most class members will not be able to attract an attorney to take their individual cases on a contingency fee basis). Since in the case at bar the claims of the class members are at most $4,000 to $6,000 claims, they are too small to be brought as individual claims. The advantages of a class action, in permitting the putative members to litigate their small claims, therefore outweigh the interest of individual class members to control the litigation of their individual cases.

The concentration of all of the plaintiffs' cases in the Eastern District of Wisconsin is desirable. Concentrating all litigation of a potential class in a forum is appropriate when the forum is the center of gravity for the litigation, so as to avoid hundreds of separate and thoroughly repetitious lawsuits. *Nelson*, 2003 U.S. Dist. Lexis * 43-44. *See also Ingram v. Corporate Receivables Inc.*, 2003 U.S. Dist. Lexis 14389, *15 (N.D. IL. 2003) (Concentration of action in one forum is desirable to serve the interests of judicial economy, avoid duplication of litigation, and avoid the possibility of inconsistent results). Similarly, all of Husco's actions that the putative class complains of occurred in Waukesha, Wisconsin, within the Eastern District of Wisconsin. Concentrating all of the

16

class' claims in one action avoids the possibility of hundreds of identical wage and hour lawsuits against Husco, and therefore is desirable.

The class proposed by the class plaintiffs also would not present significant manageability problems. A class should be certified if alleged manageability problems are speculative, and are not evident during the course of litigation that has already occurred. *In re Folding Carbon Antitrust Litigation*, 88 F.R.D. 211, 216 (N.D. IL. 1980). Most concerns about manageability flow from the lack of a predominance of common factual and legal issues. *Vodak v. City of Chicago*, 2006 U.S. Dist. Lexis 30052 *44 (N.D. IL. 2006). Differences in damages claimed by individual class members, as well as potential difficulties in distributing damages to class members does not render the class action unmanageable. *De La Fuente*, 713 F. 3d at 233. Similarly, in the case at bar the proposed class is manageable because the members of the potential class present identical claims, except for the amount of damages that each has suffered.

The proposed class is also manageable in the sense that it is sufficiently well defined, so that it would be administratively feasible to determine class membership by relying upon objective criteria. *Clay v. American Tobacco Co.*, 185 F.R.D. 483, 490 (S.D. IL. 1999). The objective criteria requirement is satisfied, even when determining membership in the class would require gathering and analyzing complicated information. *Wallace v. Chicago Housing Authority*, 224 FRD 420, 425-426 (N.D. IL. 2004). (Class is sufficiently well defined, even though determining membership will require figuring out when each person relocated from public housing, when each person subsequently moved using a voucher, and the demographic of the neighborhoods that the persons moved into).

In the case at bar, the proposed class includes all production and maintenance employees at Husco's Waukesha, Wisconsin plant, who had at least one unpaid 20 minute break at anytime on or after January 28, 2006. The damages period cuts off in October of 2007, since Husco changed the unlawful 20 minute unpaid break to a lawful 30 minute unpaid break at that time. A list of all production and maintenance employees at the Waukesha, Wisconsin plant can be determined by adding the production and maintenance employees who worked for Husco and or after January 28, 2006 but before October of 2007, who did not pass probation, to the employees who were listed on any of the seniority lists produced between January 28, 2006 and October of 2007.

Husco is required by Wisconsin law to maintain for at least three years a record of the start and end times for each employee on each day. DWD §272.11(1)(d). The employees' paychecks show the number of hours that each employee received credit for working each week. (Aguilar Aff. Ex. 1) Since the 20 minute break represents the only time when the employees were present at the plant, but were not paid, whether an individual employee had unpaid 20 minute breaks can be determined by comparing the employees' actual hours at the plant for the week (as shown by start and end times) with the number of hours for which the employee received pay. If actual hours exceed compensated hours, then the employee had at least one 20 minute break for which he was not paid, and should be included in the class. Membership in the class therefore can be ascertained through objective criteria. Mailing notices to class members also should not be difficult, since Local Lodge 1377 maintains a list of their addresses. (Vinsant Aff. ¶5)

18

The proposed class therefore satisfies all four requirements of Rule 23(b)(3) for determining that a class action is the superior method of adjudication. The conclusion is further and strongly supported by the fact that the individual claims of the plaintiff class are too small to be brought as individual claims.

**CONCLUSION**

For the above stated reasons, the proposed class satisfies each and every requirement of Rule 23(a) and 23(b)(3). The motion for class certification therefore should be granted in its entirety.

Dated this 18th day of May, 2009.

/s/Yingtao Ho
Matthew R. Robbins (State Bar No. 1016672)
mrr@previant.com
Nathan D. Eisenberg (State Bar No. 1030555)
nde@previant.com
Yingtao Ho (State Bar No. 1045418)
yh@previant.com
PREVIANT, GOLDBERG, UELMEN,
GRATZ, MILLER & BRUEGGEMAN, S.C.
1555 North RiverCenter Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500
(414) 271-6308 (fax)

ATTORNEYS FOR THIRD PARTY DEFENDANTS